## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| SHAINNA BERNARD,<br>JACOB CARVER,<br>TONI CRENSHAW,<br>ALYSSA DUNCAN,<br>COLLIN FAZIO,<br>EMILY FORSEE,<br>MISTY GOLINAR,<br>MCKENNA GRADY,<br>RYAN JONES,<br>ANGEL KOLASINSKI,<br>BRAIZE ST. CRUZ,<br>FRANCESCO WEILER,<br>CASSANDRA ZIEMER, | Case No. 1:21-cv-01103<br><br>Judge J. Philip Calabrese |

Plaintiffs,

and

JOEY GENTILE,
TEDD BYERS,

New Party Plaintiffs.

-vs-

CITY OF CLEVELAND,
CHIEF CALVIN WILLIAMS (#4022),
OFFICER RAYSHON BLUE (#2351),
OFFICER MICHAEL BOYD (#2584),
COMMANDER MICHAEL BUTLER (#6569),
OFFICER CHAD COLLINS (#926),
OFFICER JEFFREY COX (#1720),
OFFICER WILLIAM DWULAT (#581),
COMMANDER GARY GINGELL,
OFFICER STEPHANIE HUNTER (#0626),
OFFICER ADAM JANUSZEWSKI (#807),
SERGEANT STEVEN KINAS (#9259),
OFFICER TIERRA LAIRD (#1290),
OFFICER TYWON LITTLE (#2177),
OFFICER ROBERT MANGAN (#2459),
OFFICER JOSEPH MOONEY (#1867),

FIRST AMENDED COMPLAINT

JURY TRIAL DEMANDED

**OFFICER RODNEY MUNSON JR. (#1297),**
**DEPUTY CHIEF JOELLEN O'NEILL (#5045),**
**OFFICER ION ONOFREI (#2040),**
**SERGEANT TIMOTHY PATTON (#9023),**
**OFFICER THOMAS PAVLIK (#2395),**
**SERGEANT KENNETH RYAN (#9236),**
**OFFICER DAVID SIMS (#1577),**
**OFFICER KELLY SMITH (#203),**

and

**CUYAHOGA COUNTY,**
**DETECTIVE RANDOLPH KLOOS,**
**DEPUTY RICHARD RUTOWSKI,**
**OFFICER RHETT LARICCIA (#355),**
**JANE DOES 1-3,**
**JOHN DOES 1-20,**

Defendants.

Plaintiffs Shainna Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Collin Fazio, Emily Forsee, Misty Golinar, McKenna Grady, Ryan Jones, Angel Kolasinski, Braize St. Cruz, Francesco Weiler, Cassandra Ziemer, Joey Gentile, and Tedd Byers, for their Complaint against Defendants City of Cleveland, Chief Calvin Williams (#4022), Officer Rayshon Blue (#2351), Officer Michael Boyd (#2584), Commander Michael Butler (#6569), Officer Chad Collins (#926), Officer Jeffrey Cox (#1720), Officer William Dwulat (#581), Commander Gary Gingell, Officer Stephanie Hunter (#0626), Officer Adam Januszewski (#807), Sergeant Steven Kinas (#9259), Officer Tierra Laird (#1290), Officer Tywon Little (#2177), Officer Robert Mangan (#2459), Officer Joseph Mooney (#1867), Officer Rodney Munson Jr. (#1297), Deputy Chief Joellen O'Neill (#5045), Officer Ion Onofrei (#2040), Sergeant Timothy Patton (#9023), Officer Thomas Pavlik (#2395), Sergeant Kenneth Ryan (#9236), Officer David Sims (#1577), Officer Kelly Smith (#203), Cuyahoga County, Detective Randolph Kloos, Deputy Richard Rutowski, Officer Rhett LaRiccia (#355), Jane Does 1-3, and John Does 1-20, allege as follows:

2

## INTRODUCTION

1.      This is a civil rights action. On Saturday, May 30, 2020, Downtown Cleveland, like many cities nationwide, was the center of protests against racial injustice and police brutality, prompted by the murder of George Floyd in Minneapolis. The City of Cleveland, through its police department, and Cuyahoga County, through its Sheriff's Department, were called to various areas of Downtown Cleveland to engage the protesters and allegedly keep the peace. Yet, instead of protecting free speech under the First Amendment, many peaceful protesters were attacked, falsely arrested and/or charged without justification or probable cause, and worse yet, detained for multiple days in the Cuyahoga County Corrections Center and falsely charged with crimes.

2.      Plaintiffs were all protesters in downtown Cleveland who posed no threat to law enforcement or to the community when they were brutalized and/or wrongfully arrested by law enforcement.

## JURISDICTION AND VENUE

3.      The Jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

4.      Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

5.      Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiffs' claim also occurred in this judicial district.

## PARTIES

3

6.      Plaintiff Shainna Bernard, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

7.      Plaintiff Jacob Carver, at all times relevant to the allegations made in the complaint, resided in Summit County, Ohio.

8.      Plaintiff Toni Crenshaw, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

9.      Plaintiff Alyssa Duncan, at all times relevant to the allegations made in the complaint, resided in Lake County, Ohio.

10.      Plaintiff Collin Fazio, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

11.      Plaintiff Emily Forsee, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

12.      Plaintiff Misty Golinar, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

13.      Plaintiff McKenna Grady, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

14.      Plaintiff Ryan Jones, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

15.      Plaintiff Angel Kolasinski, at all times relevant to the allegations made in the complaint, resided in Lake County, Ohio.

16.      Plaintiff Braize St. Cruz, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

4

17.     Plaintiff Francesco Weiler, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

18.     Plaintiff Cassandra Ziemer, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

19.     Plaintiff Joey Gentile, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

20.     Plaintiff Tedd Byers, at all times relevant to the allegations made in the complaint, resided in Cuyahoga County, Ohio.

21.     Defendant City of Cleveland is an Ohio municipal corporation that operates the Cleveland Division of Police.  Defendant City of Cleveland is a unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant City is a "person" under 42 U.S.C. § 1983. Defendant City is the employer and principal of Chief Calvin Williams, Officer Rayshon Blue, Officer Michael Boyd, Commander Michael Butler, Officer Chad Collins, Officer Jeffrey Cox, Officer William Dwulat, Commander Gary Gingell, Officer Stephanie Hunter, Officer Adam Januszewski, Sergeant Steven Kinas, Officer Tierra Laird, Officer Tywon Little, Officer Robert Mangan, Officer Joseph Mooney, Officer Rodney Munson Jr., Deputy Chief Joellen O'Neill, Officer Ion Onofrei, Sergeant Timothy Patton, Officer Thomas Pavlik, Sergeant Kenneth Ryan, Officer David Sims, and Officer Kelly Smith, and is responsible for the policies, practices, and customs of the Cleveland Division of Police.

22.     Defendant Police Officers Chief Calvin Williams, Officer Rayshon Blue, Officer Michael Boyd, Commander Michael Butler, Officer Chad Collins, Officer Jeffrey Cox, Officer William Dwulat, Commander Gary Gingell, Officer Stephanie Hunter, Officer Adam

Januszewski, Sergeant Steven Kinas, Officer Tierra Laird, Officer Tywon Little, Officer Robert

Mangan, Officer Joseph Mooney, Officer Rodney Munson Jr., Deputy Chief Joellen O'Neill,

Officer Ion Onofrei, Sergeant Timothy Patton, Officer Thomas Pavlik, Sergeant Kenneth Ryan,

Officer David Sims, and Officer Kelly Smith, were, at all times relevant to the allegations made

in this complaint, duly appointed police officers employed by the Cleveland Division of Police,

acting within the scope of their employment and under the color of state law. They are sued in

their individual capacities.

23.     Defendant Cuyahoga County is an Ohio political subdivision that operates the

Cuyahoga County Sheriff's Office.  Defendant Cuyahoga County is a unit of local government

duly organized under the laws of the State of Ohio residing in the Northern District of Ohio

acting under the color of law. Defendant County is a "person" under 42 U.S.C. § 1983.

Defendant County is the employer and principal of Detective Randolph Kloos, Deputy Rutowski,

Officer Rhett LaRiccia, Jane Does 1-3, and John Does 1-20, and is responsible for the policies,

practices, and customs of the Cuyahoga County Sheriff's Department.

24.     Defendants Detective Randolph Kloos, Deputy Rutowski, Officer Rhett LaRiccia,

Jane Does 1-3, and John Does 1-20, were, at all times relevant to the allegations made in this

complaint, duly appointed Sheriff's deputies employed by the Cuyahoga County Sheriff's

Department, acting within the scope of their employment and under the color of state law. They

are sued in their individual capacities.

## FACTS

### May 30, 2020 Protests

25.     On May 26th, 2020, protests began in Minneapolis in response to police brutality

and specifically the police murder of George Floyd by Minneapolis Police Department officer

Derek Chauvin. Protests began in Cleveland, Ohio on May 30, 2020. Similar protests were taking place around the country, and around the world, ultimately spreading to 2,000 cities and 60 countries. 26 million people in the United States participated in the protests, making it the largest protest demonstration in the nation's history.

26.     The City of Cleveland and the Cleveland Division of Police anticipated that protests would continue as they had across the country and had time to plan for a proper police response.

27.     Over the course of the protests, hundreds of protesters gathered across Cleveland, marching together in the streets downtown and in other areas of the city.

28.     At 8:00 p.m., Cleveland Mayor Frank Jackson declared a curfew in the downtown area.  The curfew was not announced to the public until around 7:45 p.m., when it was announced via Twitter. The curfew would take effect just 15 minutes later after being announced, at 8 P.M. As a result, many people were not aware of it.

29.     This "order" was a "proclamation of civil emergency," which was signed by the Mayor and modified twice to extend the time period. The proclamation stated that persons were prohibited from "walking, running, loitering, standing or driving/motoring... upon any alley, street, highway, public property or vacant premises" in the area identified in the proclamation. However, the proclamation was not a police order and did not establish criminal penalties for violation of the proclamation.

30.     However, while the proclamation did not establish any enforceable penalties for a violation, it was part of a policy by Defendant City of Cleveland to punish and deter protesting. Defendant City of Cleveland has a policy of arresting protesters without probable cause and detaining them longer than necessary to punish and deter protesting. The proclamation was used

as a justification for arrests where there was no reasonable suspicion or probable cause of any unlawful activity and no reasonable opportunity given for people to leave the area voluntarily.

31.     During protests in 2015, in response to the acquittal of Cleveland police officer Michael Brelo after his involvement in the fatal shooting of Timothy Russell and Malissa Williams, the same policy was in effect. Defendant City of Cleveland held protesters in custody for low-level misdemeanors, often without probable cause, for nearly 36 hours because, in the City's Deputy Chief of Police's own words, the Defendants did not want to "let [the protesters] back out on the streets to protest again."

32.     In December, 2020, the Cleveland police released a report on the May 30th protests including how they could improve their response in the future. Suggested improvements included more training on such events and improving policies for crowd control and the use of force, communication among officers, and mass arrest procedures.

### Shainna Bernard

33.     Shainna Bernard is a 30-year-old Black woman who was protesting in downtown Cleveland on May 30, 2020. At all times relevant to this complaint, Shainna was participating in First Amendment protected activity.

34.     Shainna Bernard did not pose a threat to any person, law enforcement or otherwise, at any time while she was peacefully protesting.

35.     While holding a protest sign and kneeling in the front area of the Cuyahoga County Justice Center, Shainna was pepper sprayed from behind by a Defendant John Doe Cuyahoga County Sheriff's deputy, pictured in Figure A below:



Figure A

36.     Shainna received help from fellow protesters who tried to ease the pain of the pepper spray by giving her water and milk. Shainna stayed in the area of the Justice Center and continued to peacefully protest.

37.     Later in the day, Shainna was standing in the street near the Justice Center with other protesters when a John Doe officer passed Shainna and purposefully slammed his shoulder into her.

38.     While in the street, Shainna heard another protester mention that a curfew had been put in place downtown. She did not hear a police announcement of the curfew.

39.     After learning of the curfew, Shainna immediately decided to leave the area but never had an opportunity to leave. Various law enforcement officers, including mounted police, converged around her.

40.     Although they lacked probable cause and reasonable suspicion to arrest or detain Shainna, Defendants Cleveland Police officers Onofrei and Captain Butler arrested her, handcuffing her with zip ties.

41.     Shainna told one of the officers that her zip ties were too tight, to which they responded, "shut the f*** up," and tightened the ties.

42.     Shainna was then placed into a van with other arrestees, where her hands started to feel numb due to the tight zip ties around her wrists. When she asked the officers in the van for help, they denied it, telling her that her arresting officer had to loosen the ties.

43.     Cleveland Police took Shainna and other arrestees to the Cuyahoga County Corrections Center (CCCC).

44.     Shainna was still covered in pepper spray, choking, and experiencing serious pain shooting up her arm due to the zip ties, while she and other arrestees were waiting to be processed by CCCC officials. One official Shainna asked for help told her she'd have to wait until she was processed.

45.     After asking several times and with the help of various police officers and CCCC representatives, Shainna's zip ties were finally removed and she was booked into the CCCC.

46.     While going through the booking process, Shainna asked what her charges were, to which a booking officer told her, "you're here for a felony," and refused to provide any further information.

47.     Shainna experienced serious numbness and twitching in her hand and continues to suffer the results of the nerve damage caused by the zip ties that were too tight.

48.     Shainna was held at CCCC for three nights, until the early morning of June 2, 2020.

49.     Shainna was charged with Failure to Comply with Order or Signal of Police Officer Regulating Traffic in Cleveland Municipal Court. The charge was later dismissed by the prosecutor on September 2, 2020.

50.     The complaining officer was Defendant Cleveland Police Captain Michael Butler.

51.     Shainna Bernard never posed any threat to any person and was not engaged in criminal activity while she was peacefully protesting on May 30, 2020.

**Jacob Carver**

52.     Jacob Carver is a 22-year-old white man who attended the protests in Downtown Cleveland on May 30, 2020.

53.     While peaceably assembling, a group of Defendant John Doe officers surrounded him and demanded he get down on the ground.

54.     While complying to the officer's demands, Defendant Jane Doe officer struck him using her riot shield.

55.     Jacob's wrists were zip tied. The arresting officers failed to answer any questions regarding why he was being arrested.

56.     Reports indicate that Jacob was arrested by Defendant Cleveland Police Officer #4022, Chief Calvin Williams.

57.     Jacob was placed on a bus with the other arrestees.

58.     Jacob was booked into Cuyahoga County Corrections Center (CCCC) and placed in an isolation cell for medical segregation due to COVID-19.

59.     After three days of being incarcerated, Jacob was released from CCCC on June 2, 2020.

60.     Upon being released, Jacob's cellphone was not returned.

61.     Jacob's arrest report indicates that he was arrested for Aggravated Riot, but no charges were ever filed in any court.

62.     Jacob Carver never posed any threat to any person and was not engaged in criminal activity while he was peacefully protesting on May 30, 2020.

**Toni Crenshaw**

63.     Toni Crenshaw attended the protests surrounding the police killing of George Floyd in Downtown Cleveland.

64.     While on the way to their vehicle to leave downtown, Toni and her boyfriend proceeded down Ontario Avenue and decided to take a seat at a public bench on the east side of the Justice Center.

65.     The two of them were minding their business, not engaging in any disorderly behavior.

66.     When they got up from the bench, Crenshaw was approached and grabbed by a Cleveland Police officer, upon information and belief, Defendant Dwulat, who grabbed her and detained her while two John Doe officers arrived, handcuffed her and put her under arrest.

67.     Crenshaw repeatedly asked the Defendant officers what crime they were arresting her for and they would not answer.

68.     Her boyfriend also was demanding to know why Crenshaw was being arrested. As a result of his inquiry, he was also arrested and taken into custody.

69.     Crenshaw was transported to the Cuyahoga County Jail and when arrived, continued to ask jail officials, but those officials either refused or didn't know the answer.

70.     Crenshaw was then booked into the jail and fingerprinted.

71.     She was led to believe that she might be charged with disorderly conduct, and released within hours, but was taken to the women's pod D where she remained in custody for six days before the Defendants realized there was no case, and the County Jail released her. She

was at the jail with no justification from Saturday evening, May 30, until Thursday, June 4, 2020.

72.     During her lengthy period of incarceration at the County Jail, she suffered extreme emotional distress because no one could explain to her why she was in jail in the first place, and other arrested protesters were released sooner than her, and the conditions were terrible and frightening.

73.     To add insult to injury, approximately three weeks after she was released from jail, thinking her nightmare was over, Ms. Crenshaw received a summons from the Cleveland Municipal Court Clerk of Courts to appear in court on a charge of "Failure to comply with an order or signal of a police officer regulating traffic" a first-degree misdemeanor. After numerous pretrials, and further anxiety, the charge was dismissed on January 11, 2021. That charge was signed by Defendant Timothy Patton.

74.     Toni Crenshaw never posed any threat to any person and was not engaged in criminal activity while she was peacefully protesting on May 30, 2020.

**Alyssa Duncan and Angel Kolasinski**

75.     Angel Kolasinski is a 25-year-old white woman who attended the protests in Downtown Cleveland with her friend, Alyssa Duncan, a 23-year-old Black woman, on May 30, 2020.

76.     While near the Justice Center, Angel and Alyssa were subjected to chemical agents by John Doe officers who were on the scene.

77.     After receiving notice of the implemented curfew, Angel and Alyssa tried to leave the area, however, they were not afforded an opportunity to leave and were immediately arrested.

78.     Angel and Alyssa were arrested by Defendant O'Neill, both zip tied and loaded onto a van with other arrestees.

79.     Cleveland Police officers told them they were being arrested on "curfew" charges.

80.     Angel and Alyssa were both booked into Cuyahoga County Corrections Center (CCCC) on charges of Aggravated Riot and Failure to Comply.

81.     On June 1, 2020, Angel and Alyssa were released from CCCC after attending court.

82.     The Cleveland Police report indicates that Angel was charged with Failure to Comply, however the Cuyahoga County Sheriff's booking report shows her charged with a local ordinance and Aggravated Rioting.

83.     Angel was charged in Cleveland Municipal Court with Failure to Comply with Order or Signal of Police Officer Regulating Traffic. The complaining officer was Defendant Cleveland Police Captain Michael Butler.

84.     Angel's charges were dismissed by City of Cleveland prosecutors September 2, 2020.

85.     Alyssa was charged with Aggravated Riot in Cleveland Municipal Court and was then boundover to the Cuyahoga County Court of Common Pleas. The complaining officer was Defendant Cleveland Police Officer Stephanie Hunter.

86.     Alyssa's charges were dismissed by Cuyahoga County prosecutors on August 19, 2020.

87.     Angel and Alyssa's property, including cell phones and money, has never been returned to them.

88.     Alyssa Duncan and Angel Kolasinski never posed any threat to any person and was not engaged in criminal activity while they were peacefully protesting on May 30, 2020.

**Collin Fazio**

89.     Collin Fazio is a 19-year-old white man who attended the protests in downtown Cleveland on May 30, 2020 with the intent to photograph the event.

90.     As Collin photographed the protest, he witnessed police ramming protesters with their riot shields.

91.     Around 8 p.m., minutes after the curfew had been implemented, a wave of Cleveland Police began arresting protesters on E. 9th Street.

92.     Collin was not aware of the curfew as he did not receive a notification on his phone. The officers in the area never announced that a curfew had been put in place.

93.     While watching his friend's arrest, Collin asked a nearby Cleveland Police officer if he could have his friend's bag. The officer responded by pointing at Collin, and several plain clothes Cleveland Police officers grabbed him.

94.     Collin was arrested by Defendant Cleveland Police Officer Onofrei.

95.     Collin's wrists were zip tied and he was placed on a bus with other arrestees.

96.     Before being placed on the bus, an officer told him that he needed to remove his bag. Subsequently, another Cleveland Police officer cut the strap off of his bag and placed it on the ground.

97.     Collin's bag containing his camera was never returned to him.

98.     Collin was booked into the Cuyahoga County Corrections Center (CCCC) where he remained until June 2, 2020.

15

99.     Collin was charged with Failure to Comply with Order or Signal of Police Officer in the Cleveland Municipal Court. The complaining officer was Defendant Captain Michael Butler.

100.    Collin's charges were dismissed by prosecutors on September 1, 2020.

101.    Collin Fazio never posed any threat to any person and was not engaged in criminal activity while he was peacefully protesting on May 30, 2020.

### Emily Forsee and Ryan Jones

102.    On May 30, 2020, Emily Foresee attended the protests in Downtown Cleveland with her boyfriend, Ryan Jones.

103.    While leaving the Justice Center, near a thinning crowd, Emily raised her phone to capture a photo of the broken windows on the first floor of the Justice Center.

104.    As Emily dropped her arm, a John Doe Cuyahoga County Sheriff's deputy emerged from behind the broken window, made eye contact with her, and began to shoot at her. This Deputy is pictured in Figure B.



Figure B

105.    Sheriff's reports indicate that Deputy Kloos and Deputy Rutkowski were both

present and shooting.

106.    Emily managed to duck to avoid being shot in the head, however, her left

shoulder was struck by a rubber bullet, pictured in Figure C:



Figure C

107.     As Emily's arm exploded in pain, Ryan yelled out in pain as the left side of his stomach was struck by a rubber bullet, pictured in Figure D:



Figure D

108.     With the assistance of other protesters, Emily scooped Ryan up and ran to shelter in a nearby parking lot.

109.     Ryan was temporarily incapacitated for nearly ten minutes. He received aid from street medics.

110.     Emily and Ryan were not committing any violent acts or acts of vandalism to warrant such force.

**Misty Golinar**

111.     Misty Golinar is a 36-year-old woman who was protesting in downtown Cleveland on May 30, 2020.

112.     Misty stood near the stairs of the Justice Center and attempted to talk to some of the police officers. She was not posing a threat to anyone.

113.     While near the stairs, Misty was approached by an aggressive John Doe Cuyahoga County Sherriff's deputy who proceeded to spray her in the face with an unknown pressurized substance.

114.     Terrified and confused as to why she has just been sprayed, a nearby officer shouted, "Your dude shouldn't have tried to throw something at the officers."

115.     Misty never threw anything at the officers. She also had not been near anyone doing such.

116.     After being sprayed for no apparent reason, Misty was unable to see; however, other demonstrators came to her aid.

117.     Misty Golinar never posed any threat to any person and was not engaged in criminal activity while she was peacefully protesting on May 30, 2020.

**McKenna Grady**

118.     McKenna Grady is a 20-year-old woman who attended the protests in Downtown Cleveland on May 30, 2020.

119.     After aiding a protester who had been pepper sprayed, McKenna headed back to her vehicle.

120.     While walking back to her vehicle, reports indicate that McKenna was stopped by Defendant Cleveland Police Officers Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, and Mooney.

121.     McKenna was arrested and walked to the Cuyahoga County Corrections Center (CCCC) where she was later booked in.

122.     On June 2, 2020, McKenna was released from CCCC custody.

123.    Upon being released, McKenna's jewelry, backpack, and cellphone were not returned.

124.    McKenna was charged with Aggravated Riot, a felony, in Cleveland Municipal Court, which was boundover to the Cuyahoga County Court of Common Pleas.

125.    Defendant Cleveland Police Officer David Sims was the complaining officer.

126.    The Cuyahoga County prosecutors dismissed the charges against McKenna on August 19, 2020.

127.    McKenna Grady never posed any threat to any person and was not engaged in criminal activity while she was peacefully protesting on May 30, 2020.

**Braize St. Cruz**

128.    Braize St. Cruz is a 26-year-old man who was protesting in downtown Cleveland on May 30, 2020.

129.    While standing in front of the Justice Center with other demonstrators, Braize saw Cuyahoga County Sheriffs unloaded from a bus and began pushing and tear gassing those in the crowd, including Braize.

130.    In the midst of being tear gassed, Braize was accosted and shoved by a John Doe Cuyahoga County Sherriff's deputy.

131.    Without being afforded notice and an opportunity to leave, Braize was arrested by Cuyahoga County Sheriff John Doe.

132.    Braize was aggressively lifted up by four officers, who handcuffed him and placed him in a bus with a handful of other arrestees.

133.    Reports indicate that Braize was arrested by Defendant Cleveland Police Officer #4022, Chief Calvin Williams.

20

134.    Braize was held in CCCC for four nights, until being released on June 4, 2020.

135.    Braize was released from CCCC without any charges being filed against him.

136.    Upon being released, Braize requested his cellphone, however, he was told that it was admitted into evidence. As of the date of this Complaint, Braize's cellphone has never been returned.

137.    Braize St. Cruz never posed any threat to any person and was not engaged in criminal activity while he was peacefully protesting on May 30, 2020.

**Francesco Weiler**

138.    Francesco Weiler is a 29-year-old man who was protesting peacefully in downtown Cleveland on May 30, 2020.

139.    Francesco was, like a majority of protesters, initially gathered near the steps of the Cuyahoga County Justice Center on W. Lakeside Avenue and W. 3rd Street.

140.    Around 6 p.m., after witnessing the growing animosity and widespread use of chemical agents by law enforcement officers at the protest, Francesco started searching for the friends he went to the protest with so that he could leave.

141.    Francesco found a group of his friends sitting on a bench on W. 3rd Street, trying to recoup and recover from being sprayed with chemical agents.

142.    While Francesco and his friends were sitting on a bench, a group of people on the street near them began to vandalize a City of Cleveland car, smashing windows and trying to overturn it.

143.    Wanting to keep distance from this, Francesco and his friends stood and backed up against the wall of the Justice Center behind them.

21

144.    While their backs were against the wall, John Doe Cuyahoga County Sheriff's officers began shooting pepperballs—the same less-lethal rounds containing oleoresin capsicum (OC/pepper spray) that were also used on Emily Forsee and Ryan Jones—at the group of people vandalizing the city car.

145.    Though he was completely uninvolved and separate from the city car, John Doe officers also began shooting pepperball rounds at Francesco.

146.    Francesco, confused and scared, tried to take cover from the pepperball rounds.

147.    Three of Francesco's friends were trapped between a dumpster and a wall of the Justice Center, and he attempted to help cover them so that they could move to a safe area.

148.    John Doe officers continued to shoot indiscriminately at Francesco and every person his immediate area, regardless of what they were doing.

149.    Francesco was unable to disperse from this area as he continued to be shot with pepperballs.

150.    Frustrated by the situation, Francesco turned and made various obscene gestures toward the John Doe officers who were shooting pepperballs at him.

151.    After turning back around, Francesco heard a John Doe officer yell, "get him!" Another John Doe officer ran, forcefully seized Francesco, and pulled him into the nearby sally port, which leads to the entrance of the Cuyahoga County Corrections Center (CCCC).

152.    The same John Doe officer who had given the order for Francesco to be arrested then went to Francesco, pulled Francesco's face mask off, got very close to his face, and yelled, "you're going to jail for vandalism!"

153.    A Jane Doe officer handcuffed Francesco with zip ties. He was never Mirandized.

154.    Various John Doe officers were handling Francesco, as their eyes were tearing up from the pepperballs Francesco had been shot with.

155.    Two John Doe officers escorted Francesco to the booking area of the CCCC, where he was booked in, with no information on what he was being charged with.

156.    Francesco was never charged with vandalism. He was charged with Failure to Comply with Order or Signal of Police Officer Regulating Traffic, which was dismissed on October 21, 2020.

157.    The complaining officer on Francesco's charges was Defendant Cleveland Police Sergeant Timothy Patton.

158.    Francesco spent four nights in CCCC and was released in the morning of June 2, 2020.

**Cassandra Ziemer**

159.    Cassandra Ziemer is a 27-year-old nonbinary individual whose pronouns are they/them.

160.    Cassandra was peacefully protesting in downtown Cleveland on May 30, 2020.

161.    While peaceably assembling on the Justice Center steps, Cassandra was tripped and dragged by the collar of their hoodie by a John Doe Cuyahoga County Sheriff's deputy.

162.    Some point after being unwarrantedly dragged, Cassandra was pepper sprayed.

163.    After being aggressively pepper sprayed, they were put on their stomach and handcuffed by John Doe Cuyahoga County Sheriffs.

164.    The officer left them on their stomach handcuffed for several minutes until dragging them up the Justice Center steps and leaving them near the front desk inside of the Justice Center.

165.    Cassandra was eventually moved to a bench with a handcuff bar attached.

166.    Covered in pepper spray and in an abundance of pain from being dragged up the Justice Center stairs, Cassandra politely asked staff to pour water on them, although it failed to alleviate their pain.

167.    Cassandra was booked into the Cuyahoga County Corrections Center (CCCC). During processing, they were not asked any questions regarding their medical history.

168.    Cassandra takes a plethora of medication for their various conditions. While incarcerated, they experience severe psychological issues due to being without mood stabilizers and antidepressants.

169.    Due to their psychological condition, Cassandra put in a solitary cell.

170.    After being incarcerated for three nights, Cassandra was released from CCCC on June 2, 2020.

171.    Upon being released, most of Cassandra's items were returned, however, they never received their cellphone.

172.    Cassandra was released without any charges filed against them.

**Joey Gentile**

173.    Joey Gentile is a 29-year-old white man who was peacefully protesting in downtown Cleveland on May 30, 2020.

174.    Joey was near the Cuyahoga County Justice Center with other protesters, kneeling on the ground with his hands up in the air.

24

175.    While Joey and other protesters were kneeling, Defendant John Doe Cleveland Police Officers and/or Cuyahoga County Sheriff's Deputies deployed multiple chemical agents, including teargas and pepper spray, into protesters' vicinity.

176.    John Doe Cleveland Police Officers and/or John Doe Cuyahoga County Sheriff's Deputies deployed pepper spray directly into Joey's face.

177.    Due to the combination of pepper spray deployed directly on his face and exposure to teargas, Joey sustained a chemical burn beneath his eye.

178.    Joey Gentile never posed any threat to any person and was not engaged in criminal activity while he was peacefully protesting on May 30, 2020.

**Tedd Byers**

179.    Tedd Byers is a 21-year-old Black man who was peacefully protesting in downtown Cleveland on May 30, 2020.

180.    While protesting, Tedd heard police officers in the area giving orders to leave the area and disperse. Tedd began to do so, and started walking away to leave.

181.    While walking away, reports indicate that Tedd was stopped by Defendant Cleveland Police Officers Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, and Mooney, under order of Defendant Commander Gingell.

182.    Although they lacked probable cause and reasonable suspicion to arrest or detain Tedd, Defendants Cleveland Police officers Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, and Mooney arrested him.

183.    Tedd was arrested and walked to the Cuyahoga County Corrections Center (CCCC) where he was later booked in.

184.    On June 1, 2020, Tedd was released from CCCC custody.

185.   Tedd was charged with Aggravated Riot, a felony, in Cleveland Municipal Court, which was boundover to the Cuyahoga County Court of Common Pleas.

186.   Defendant Cleveland Police Officer Stephanie Hunter was the complaining officer.

187.   The Cuyahoga County prosecutors dismissed the charges against Tedd on August 19, 2020.

188.   Tedd Byers never posed any threat to any person and was not engaged in criminal activity while he was peacefully protesting on May 30, 2020.

189.   The actions of each Defendant officer set forth above were without reasonable suspicion or probable cause, were unjustified, objectively unreasonable, and constitute deliberate indifference.

190.   Defendants engaged in willful, wanton, reckless, and/or negligent conduct.

191.   Each Defendant officer had the duty and opportunity to intervene to prevent the violations of Plaintiffs' rights, yet did nothing to assist or protect them or stop the violations.

192.   The Defendant officers jointly agreed and/or conspired with one another to prepare false, misleading, and incomplete official reports and to give false, misleading, incomplete versions of the events to their superiors in order to cover up their misconduct.

193.   The actions of the Defendants were taken jointly, in concert, and with shared intent.

194.   Defendant officers' actions, as alleged in the preceding paragraphs, were performed under color of law and deprived Plaintiff of federally protected rights, in violation of Title 42 U.S.C. §1983.

195.   Defendants' conduct was the direct, actual, and proximate cause of Plaintiffs' injuries.

196.    As a direct and proximate result of Defendants' conduct, Plaintiffs sustained injuries, including, *inter alia*, fear, stress, anxiety, injury, pain, emotional distress, embarrassment, humiliation, loss of liberty, costs, and potential exposure to COVID-19.

197.    The injuries suffered were all preventable had Defendants not engaged in illegal conduct in violation of Plaintiffs' fundamental rights.

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – First Amendment: Retaliation Based on Speech and Assembly against all Defendants

198.    All of the foregoing paragraphs are incorporated as though fully set forth here.

199.    Peaceful protesting and assembly are fundamental constitutional activities protected by the First Amendment to the United States Constitution.

200.    Defendants' policy and actions of citing, arresting, and imprisoning Plaintiffs for days, and charging them with crimes, were at least partly – if not solely – motivated by Defendants' response to the individual Plaintiffs' exercise of their First Amendment rights to protest and assemble peacefully.

201.    Defendants' policy and actions punished the individual Plaintiffs for engaging in their constitutionally protected activities of peaceful protest and assembly.

202.    Defendants' policy and actions constitute retaliation against the individual Plaintiffs for Plaintiffs' exercise of fundamental First Amendment rights.

203.    Defendants' policy and actions would chill a person of ordinary firmness from engaging in the constitutionally protected activities of peaceful protest and assembly.

204.    As a direct result of Defendants' unconstitutional policy and practice, and the constitutional violations committed by Defendants, Plaintiffs have suffered serious personal injuries and are entitled to relief under the US Constitution and 42 U.S.C. § 1983.

27

205.    Defendants' unconstitutional policy of retaliation against protesters has caused and will continue to cause irreparable harm to Plaintiffs, and the community at large, to engage in the constitutionally protected activities of peaceful protest and assembly.

**SECOND CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 – Unconstitutional Seizure: Excessive Force**
**against Defendants Kloos, Rutowski, Jane Does 1-3, and John Does 1-20**

206.    All of the foregoing paragraphs are incorporated as though fully set forth here.

207.    The actions of Defendants Kloos, Rutowski, Jane Does 1-3, and John Does 1-20, as alleged in the preceding paragraphs, violated Shainna Bernard's, Jacob Carver's, Emily Forsee's, Misty Golinar's, Ryan Jones', Braize St. Cruz's, Cassandra Ziemer's, Francesco Weiler's, and Joey Gentile's rights under the Fourth Amendment to the United States Constitution to be secure in their persons against unreasonable seizure, and their right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

208.    Plaintiffs Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Ryan Jones, Braize St. Cruz, Cassandra Ziemer, Francesco Weiler, and Joey Gentile were subjected to the use of excessive force in violation of their Fourth Amendment rights.

209.    The Defendant officers acted unreasonably and with deliberate indifference to the rights and safety of Plaintiffs.

210.    Defendant officers failed to prevent this misconduct, in spite of having the duty and opportunity and means to intervene to protect Plaintiffs.

211.    Defendants' conduct during and after their uses of force against Plaintiffs Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Ryan Jones, Braize St. Cruz, Cassandra

Ziemer, Francesco Weiler, and Joey Gentile constitutes cruel and unusual punishment in violation of their constitutional rights.

212.    The actions of the Defendant Officers as alleged in this count of the complaint were the direct and proximate cause of the constitutional violations set forth above and of Shainna Bernard's, Jacob Carver's, Emily Forsee's, Misty Golinar's, Ryan Jones', Braize St. Cruz's, Cassandra Ziemer's, Francesco Weiler's, and Joey Gentile's injuries.

213.    Defendants are jointly and severally liable for this conduct.

### THIRD CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – False Arrest
**against Defendants Williams, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik, Ryan, Smith, LaRiccia, Jane Does 1-3, and John Does 1-20**

214.    All of the foregoing paragraphs are incorporated as though fully set forth here.

215.    As described above, the Defendant officers, acting individually, jointly, and in conspiracy with each other, caused Plaintiffs Shainna Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Collin Fazio, McKenna Grady, Angel Kolasinski, Braize St. Cruz, Francesco Weiler, Cassandra Ziemer, and Tedd Byers to be unreasonably seized, detained, imprisoned and deprived of their liberty without probable cause to believe that they had committed a crime, in violation of their rights secured by the Fourth and Fourteenth Amendments to the United States Constitution, and/or failed to prevent this misconduct in spite of having the duty and opportunity and means to intervene to protect them.

216.    Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, Mooney, Butler, and Gingell, exercising their power and authority as Cleveland Police Officers, intentionally and unlawfully arrested Plaintiffs McKenna Grady, Alyssa Duncan, and Tedd Byers without lawful privilege, against their consent, and without probable cause. Plaintiffs Alyssa Duncan's, McKenna Grady's, and Tedd Byers' arrests deprived

them of their rights secured by the Fourth and Fourteenth Amendments to the United States

Constitution and are addressed herein by and through 42 U.S.C. §1983.

217.    Defendants Onofrei and Butler, exercising their power and authority as Cleveland

Police Officers, intentionally and unlawfully arrested Plaintiffs Collin Fazio, Shainna Bernard,

and Angel Kolasinski without lawful privilege, against their consent, and without probable

cause. Plaintiffs Collin Fazio's, Shainna Bernard's, and Angel Kolasinski's arrests deprived them

of their rights secured by the Fourth and Fourteenth Amendments to the United States

Constitution and are addressed herein by and through 42 U.S.C. §1983.

218.    Defendants Dwulat, Ryan, Smith, and O'Neill, exercising their power and

authority as Cleveland Police Officers, intentionally and unlawfully arrested Plaintiff Toni

Crenshaw without lawful privilege, against their consent, and without probable cause. Plaintiff

Toni Crenshaw's arrests deprived her of her rights secured by the Fourth and Fourteenth

Amendments to the United States Constitution and are addressed herein by and through 42

U.S.C. §1983.

219.    Defendants Jane Does 1-3 and John Does 1-20, exercising their power and

authority as Cleveland Police and/or Cuyahoga County Sheriff's Deputies, intentionally and

unlawfully arrested Plaintiff Francesco Weiler without lawful privilege, against his consent, and

without probable cause. Plaintiff Francesco Weiler's arrest deprived him of his rights secured by

the Fourth and Fourteenth Amendments to the United States Constitution and are addressed

herein by and through 42 U.S.C. §1983.

220.    Defendants Chief Williams, Jane Does 1-3 and John Does 1-20, exercising their

power and authority as Cleveland Police and/or Cuyahoga County Sheriff's Deputies,

intentionally and unlawfully arrested Plaintiffs Braize St. Cruz and Jacob Carver without lawful

privilege, against their consent, and without probable cause. Plaintiffs Braize St. Cruz's and

Jacob Carver's arrests deprived them of their rights secured by the Fourth and Fourteenth

Amendments to the United States Constitution and are addressed herein by and through 42

U.S.C. §1983.

221.    Defendants Officer LaRiccia, Jane Does 1-3 and John Does 1-20, exercising their

power and authority as Cleveland Police and/or Cuyahoga County Sheriff's Deputies,

intentionally and unlawfully arrested Plaintiff Cassandra Ziemer without lawful privilege,

against their consent, and without probable cause. Plaintiff Cassandra Ziemer's arrest deprived

them of their rights secured by the Fourth and Fourteenth Amendments to the United States

Constitution and are addressed herein by and through 42 U.S.C. §1983.

222.    No Plaintiff failed to comply with an order of any police officer.

223.    The Defendant Officers were acting under color of law and within the scope of

their employment when they took these actions.

224.    As a direct and proximate cause of Defendants' actions, Plaintiffs Shainna

Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Collin Fazio, McKenna Grady, Angel

Kolasinski, Braize St. Cruz, Francesco Weiler, Cassandra Ziemer, and Tedd Byers suffered

injuries, including but not limited to the loss of liberty, emotional distress, loss of reputation,

legal fees, and other damages as set forth in this Complaint.

**FOURTH CLAIM FOR RELIEF:**
**42 U.S.C. § 1983 - Fourth and Fourteenth Amendments: Malicious Prosecution**
**against Defendants Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Hunter, Januszewski,**
**Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik, Ryan, Sims,**
**Smith, Patton, Jane Does 1-3, and John Does 1-20**

225.    All of the foregoing paragraphs are incorporated as though fully set forth here.

226.    Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, Mooney, Butler, Hunter, and Gingell, acting individually, jointly, and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Plaintiffs Alyssa Duncan and Tedd Byers, knowing there was no probable cause for the criminal prosecution.

227.    Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, Mooney, Butler, Gingell, and Sims, acting individually, jointly, and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Plaintiff McKenna Grady, knowing there was no probable cause for the criminal prosecution.

228.    Defendants Onofrei and Butler, acting individually, jointly, and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Plaintiffs Collin Fazio, Shainna Bernard, and Angel Kolasinski, knowing there was no probable cause for the criminal prosecution.

229.    Defendants Dwulat, Ryan, O'Neill, Smith, and Patton, acting individually, jointly, and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Plaintiff Toni Crenshaw, knowing there was no probable cause for the criminal prosecution.

230.    Defendants Patton, Jane Does 1-3, and John Does 1-20, acting individually, jointly, and in conspiracy with each other, instigated, influenced or participated in the decision to prosecute Plaintiff Francesco Weiler, knowing there was no probable cause for the criminal prosecution.

231.    All criminal prosecutions against these Plaintiffs were terminated in favor of Plaintiffs.

232.   Defendants accused Plaintiffs of criminal activity knowing those accusations to be without genuine probable cause.

233.   Defendants made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

234.   Defendants, acting individually, jointly, and in conspiracy with each other, deliberately engaged in arbitrary and conscience-shocking conduct that contravened fundamental canons of decency and fairness and violated Plaintiffs' substantive due process rights and in violation of the Fourteenth and Fourth Amendments to the United States Constitution.

235.   Defendants acted under color of law and within the scope of their employment when they took these actions.

236.   As a direct and proximate cause of Defendants' misconduct, Plaintiffs Shainna Bernard, Toni Crenshaw, Alyssa Duncan, Collin Fazio, McKenna Grady, Angel Kolasinski, Francesco Weiler, and Tedd Byers suffered and continue to suffer injury and damages as set forth in this Complaint.

### FIFTH CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 – Supervisory Liability
### against Defendants Chief Williams, Commander Butler, Commander Gingell, Sergeant Kinas, Deputy Chief O'Neill, Sergeant Patton, and Sergeant Ryan

237.   All of the foregoing paragraphs are incorporated as though fully set forth here.

238.   The constitutional injuries complained of here were proximately caused by (i) the intentional misconduct of the supervisory defendants, or (ii) by these supervisory defendants being deliberately and recklessly indifferent to their subordinates' misconduct, knowing that ignoring that misconduct would necessarily violate Plaintiffs' constitutional rights.

239.     Specifically, Defendants Chief Williams, Captain Butler, Commander Gingell, Sergeant Kinas, Deputy Chief O'Neill, Sergeant Patton, and Sergeant Ryan were aware of and facilitated, condoned, or oversaw the unconstitutional conduct of other Defendants.

240.     Defendants Williams, Butler, Gingell, Kinas, O'Neill, Patton, and Ryan acted under color of law and within the scope of their employment when they took these actions.

241.     As a direct and proximate result of the actions of these supervisory defendants, Plaintiffs Shainna Bernard's, Toni Crenshaw's, Alyssa Duncan's, Collin Fazio's, McKenna Grady's, Angel Kolasinski's, Francesco Weiler's, Jacob Carver's,  and Tedd Byers' constitutional rights were violated and they suffered injuries and damages, including but not limited to loss of liberty, sickness and injury, emotional and physical pain and suffering, and other grievous injuries and damages as set forth above.

242.     Defendants are jointly and severally liable for this conduct.

### SIXTH CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 *Monell* Claim
### against Defendant City of Cleveland

243.     All of the foregoing paragraphs are incorporated as though fully set forth here.

244.     The constitutional violations by Defendants and/or their employees/subordinates/ agents as set forth in this Complaint are not an isolated incident. The City of Cleveland has a history of improperly arresting people during times of protest.

245.     On May 23, 2015, following the not-guilty verdict in the trial of Michael Brelo, the Cleveland police officer charged with two counts of voluntary manslaughter for the deaths of Timothy Russell and Malissa Williams, protesters gathered in downtown Cleveland. Cleveland Police improperly detained and arrested protesters, and caused them to be incarcerated until May 25, charged and prosecuted criminally. The criminal cases were eventually dismissed. Several of

these arrestees sued the City of Cleveland for violating their Constitutional Rights. The City of

Cleveland settled their claims.

246.    The Division of Police admitted its policy of arresting and holding people in order

to remove them from the streets during times of protest. On June 24, 2015, when Cleveland

Deputy Chief of Police Dornat "Wayne" Drummond was asked why protesters charged with

low-level misdemeanors were arrested instead of cited and immediately released, he explained,

"I'll let the Law Department respond to your concerns, but from my perspective, it doesn't make

much sense to cite and release the protesters and let them back out on the streets to protest

again."

247.     Similarly, on July 20, 2016, during the Republican National Convention in

Cleveland, Cleveland Division of Police officers wrongfully arrested a number of protesters for

their involvement in First Amendment-protected activity. These protesters were detained,

charged criminally, and prosecuted for months. Eventually, every charge was dismissed.

248.    On May 30, 2020 and in the days thereafter, Cleveland Police arrested 120

people, many of whom were arrested for alleged violations of the curfew. According to

Cleveland.com, as of December 2020, over 50 of these cases have been dismissed.

249.    The conduct of Defendants and/or their employees/subordinates/agents as set

forth in this Complaint resulted from and were taken pursuant to one or more interrelated City of

Cleveland policies (even if not official written edicts), practices, and/or customs of civil rights

violations and unconstitutional practices.

250.    Defendant City of Cleveland, at all times relevant herein, ratified, approved,

authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective

employees and/or agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

251.     The proclamation of curfew imposed by the Mayor and endorsed by the City of Cleveland is Unconstitutional on its face and/or as applied to Plaintiffs because it was: (a) void; (b) overbroad;  (c) First Amendment retaliation; (d) prior restraint; (e) violated the separation of powers; (f) violated the fundamental rights of the Plaintiffs, including the right to assemble under the First Amendment; (g) violated equal protection; and (h) violated  procedure due to vagueness.

252.     At all times relevant, the Defendant City of Cleveland had interrelated de facto policies, practices, and customs which included, *inter alia*:

a.     the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in uses of force, false arrest, unreasonable seizures, and malicious prosecutions;

b.     the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs related to police engaging in false arrest, unreasonable seizures, and malicious prosecutions;

c.     the failure to properly hire, train, supervise, discipline, transfer, monitor, investigate, counsel and/or otherwise control their police officers who engage in fabrication of statements, reports, and testimony;

d.     the code of silence.

253.     The aforementioned de facto policies, practices, and customs of the City of Cleveland lead to harmful consequences to people who are the victims of police encounters within the City limits, including Plaintiffs.

254.     Moreover, the conduct of Defendant City of Cleveland and/or its employees/subordinates/agents demonstrates the City of Cleveland's custom of tolerance or acquiescence of civil rights violations and unconstitutional practices.

255.    The Defendant officers committed their misconduct in light of and because of the policy, practice, and custom of the code of silence among City of Cleveland police officers. Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

256.    The policies, practices, and customs of the Defendant City and the Division of Police were the moving force behind the misconduct described in this Count and behind the violations of Plaintiffs' rights.  The widespread practices were so well settled as to constitute *de facto* policy in the CDP, were part of CDP's culture, and were allowed to exist because municipal policymakers with authority over the practices exhibited deliberate indifference to the problems, effectively ratifying them.

257.    In addition, the Defendants' misconduct was undertaken pursuant to the policy and practices of the Defendant City and the CDP in that the violation of Plaintiff's rights, and as a result of conduct by the City's relevant final policymaker or the persons to whom final policymaking authority had been delegated.

258.    The actions of the Defendant Officers were approved, encouraged, and/or ratified by policymakers for the Defendant City and the CDP with final policymaking authority.

259.    The policy, practice, and custom of a code of silence results in police officers refusing to report instances of misconduct of which they are aware, including the type of misconduct describe in this complaint, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil

liability, or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

260.    The de facto policies, practices and customs of failing to hire, train, supervise, monitor, investigate, discipline, transfer, counsel and/or control officer misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize lying and immunize officers from discipline.

261.    That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread City policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and other officials and officers of the Cleveland Division of Police.

262.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Shainna Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Angel Kolasinski, Collin Fazio, McKenna Grady, Braize St. Cruz, Francesco Weiler, Tedd Byers, Joey Gentile, and Cassandra Ziemer because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

263.    But for the belief that they would be protected—both by fellow officers and by the City of Cleveland—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Shainna Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Angel Kolasinski, Collin Fazio, McKenna Grady, Braize St. Cruz, Francesco Weiler, Tedd Byers, Joey Gentile, and Cassandra Ziemer.

264.     The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts against Shainna Bernard, Jacob Carver, Toni Crenshaw, Alyssa Duncan, Angel Kolasinski, Collin Fazio, McKenna Grady, Braize St. Cruz, Francesco Weiler, Tedd Byers, Joey Gentile, and Cassandra Ziemer alleged in this complaint.

265.     The City of Cleveland therefore acted as the moving force behind and the direct and proximate causes of the violations of Shainna Bernard's, Jacob Carver's, Toni Crenshaw's, Alyssa Duncan's, Angel Kolasinski's, Collin Fazio's, McKenna Grady's, Braize St. Cruz's, Francesco Weiler's, Tedd Byers', Joey Gentile's, and Cassandra Ziemer's constitutional rights and all injuries and damages suffered by them.

266.     The City of Cleveland, at all times relevant herein, was deliberately indifferent to, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

267.     Defendants are jointly and severally liable for this conduct.

### SEVENTH CLAIM FOR RELIEF:
### 42 U.S.C. § 1983 *Monell* Claim
### against Defendant Cuyahoga County

268.     All of the foregoing paragraphs are incorporated as though fully set forth here.

269.     The actions of the individual Defendants, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Defendant Cuyahoga County.

270.     Defendant Cuyahoga County, at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or

agents and consequently are directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

271.    Cuyahoga County Sheriff's officers used rampant, indiscriminate, and unjustified force against protesters without probable cause.

272.    Another person present at protests on May 30, 2020, John Sanders, lost his eye after a Cuyahoga County Sheriff's deputy shot him with a beanbag gun while he was walking away, not engaged in criminal action, and not presenting a threat.

273.    According to Cleveland.com, twelve deputies who fired beanbag rounds were cleared of wrongdoing, even though some were not certified to fire beanbag rounds.

274.    Despite the facts and circumstances surrounding these false arrests and uses of force which clearly demonstrate that the actions of the individual Defendants were unreasonable and unlawful, upon information and belief, Cuyahoga County has failed to effectively investigate or impose any discipline on the individual Defendants for their illegal behavior.

275.    At all times relevant, the Defendant Cuyahoga County had interrelated de facto policies, practices, and customs which included, *inter alia*:

  a.    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their officers who engage in unjustified use of excessive and/or unreasonable force;

  b.    the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of force against peaceful protesters;

  c.    the failure to properly investigate the use of excessive and unreasonable force against citizens, including peaceful protesters;

  d.    the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control their officers who engage in unjustified use of excessive and/or unreasonable force, false arrest, and/or malicious prosecution;

e.     the implementation of unconstitutional policies—whether written or unwritten or official or unofficial, practices, and customs for use of force against peaceful protesters;

f.     the code of silence.

276.   Defendants Kloos and Rutkowski, along with other deputies of the Cuyahoga County Sheriff's Office, used rifles which fired dangerous projectiles at citizens without adequate training. The County failed to train all deputies on the use of these weapons, yet were authorized without appropriate policy and training the use of these dangerous weapons against peaceful protestors or citizens who just happened to be in the area near the Justice Center, committing no disturbance or criminal activity.

277.   The aforementioned de facto policies, practices, and customs of Cuyahoga County include acts of excessive use of force, false arrest, malicious prosecution, and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

278.   Cuyahoga County has engaged in little or no meaningful investigation or disciplinary action in response to the misconduct of its officers, thereby creating a culture or climate where Cuyahoga County Sheriff's Office deputies can escape accountability for their acts of misconduct with impunity.

279.   These municipal defendants were the moving force behind the conduct of the individual defendants in uses of force against Plaintiffs Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Ryan Jones, Braize St. Cruz, Francesco Weiler, Cassandra Ziemer, and Joey Gentile.

280.   The policy, practice, and custom of a code of silence results in officers refusing to report instances of misconduct of which they are aware, including unlawful searches, seizures, false arrests, and malicious prosecution, despite their obligation under Department policies to do

so, and also includes officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they or their fellow officers have engaged in misconduct.

281.    The de facto policies, practices and customs of failing to hire, train, supervise, monitor, discipline, transfer, counsel and/or control officer misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize correctional officers from discipline.

282.    That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread Cuyahoga County Sheriff's Office policy, practice, and custom is further established by the involvement in, and ratification of, these acts by supervisors and County policymakers, as well as by a wide range of other officials, officers, and divisions of the Cuyahoga County Sheriff's Office.

283.    The policies, practices and/or customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Francesco Weiler, Braize St. Cruz, Ryan Jones, and Joey Gentile because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

284.    But for the belief that they would be protected—both by fellow officers and by Cuyahoga County—from serious consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Francesco Weiler, Braize St. Cruz, Ryan Jones, and Joey Gentile.

285.   The interrelated policies, practices and customs, as alleged in this complaint, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts against Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Francesco Weiler, Braize St. Cruz, Ryan Jones, and Joey Gentile alleged in this complaint.

286.   Cuyahoga County therefore acted as the moving force behind and the direct and proximate causes of the violations of Shainna Bernard's, Jacob Carver's, Emily Forsee's, Misty Golinar's, Francesco Weiler, Braize St. Cruz's, Ryan Jones', and Joey Gentile's constitutional rights and all injuries and damages suffered by them.

287.   Defendants are jointly and severally liable for this conduct.

### EIGHTH CLAIM FOR RELIEF:
### State Law Claim for Abuse of Process
### against Defendants, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Hunter, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Patton, Pavlik, Ryan, Smith, Sims, Jane Does 1-3, and John Does 1-20

288.   All of the foregoing paragraphs are incorporated as though fully set forth here.

289.   In the alternative, Defendants Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Hunter, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Patton, Pavlik, Ryan, Smith, Sims, Jane Does 1-3, and John Does 1-20, while acting under the color of law, by instituting and continuing a legal proceeding with probable cause, did so in an attempt to accomplish an ulterior purpose for which it was not designed and that proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and direct damage has resulted from the wrongful use of process.

290.   Defendants Blue's, Boyd's, Butler's, Collins', Cox's, Dwulat's, Gingell's, Hunter's, Januszewski's, Kinas', Laird's, Little's, Mangan's, Mooney's, Munson's, O'Neill's, Onofrei's, Pavlik's, Ryan's, Smith's, Sims', Patton's, Jane Does 1-3's, and John Does 1-20's abuse

of this process constitutes a deprivation of the Plaintiffs Toni Crenshaw's, Alyssa Duncan's, Collin Fazio's, Shainna Bernard's, McKenna Grady's, Angel Kolasinski's, and Tedd Byers' right to due process.

291.    As a direct, proximate and foreseeable result of Defendants' actions, Plaintiffs suffered and continue to suffer injuries and damages as set forth in this Complaint.

NINTH CLAIM FOR RELIEF:
**State Law Claim for Negligence – Willful, Wanton and Reckless Conduct against Defendants Williams, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Hunter, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Patton, Pavlik, Ryan, Smith, Sims, LaRiccia, Kloos, Rutowski, Jane Does 1-3, and John Does 1-20**

292.    All of the foregoing paragraphs are incorporated as though fully set forth here.

293.    Defendants Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Patton, Pavlik, Ryan, and Smith acted negligently when they falsely arrested Plaintiffs Shainna Bernard, Toni Crenshaw, Alyssa Duncan, Collin Fazio, McKenna Grady, Angel Kolasinski, and Tedd Byers.

294.    Defendant Butler acted negligently when he maliciously prosecuted Plaintiffs Shainna Bernard, Collin Fazio, and Angel Kolasinski.

295.    Defendant Hunter acted negligently when she maliciously prosecuted Plaintiffs Alyssa Duncan and Tedd Byers.

296.    Defendant David Sims acted negligently when he maliciously prosecuted Plaintiff McKenna Grady.

297.    Defendant Timothy Patton acted negligently when he maliciously prosecuted Plaintiffs Toni Crenshaw and Francesco Weiler.

298.    Defendants Jane Does 1-3 and John Does 1-20 acted negligently when they falsely arrested Plaintiff Francesco Weiler.

299.    Defendants Williams, Jane Does 1-3, and John Does 1-20 acted negligently when they falsely arrested Plaintiffs Braize St. Cruz and Jacob Carver.

300.    Defendants LaRiccia, Jane Does 1-3, and John Does 1-20 acted negligently when they falsely arrested Plaintiff Cassandra Ziemer.

301.    Defendants Kloos and Rutowski acted negligently when they used excessive force against Plaintiffs Emily Forsee and Ryan Jones.

302.    Defendants Jane Does 1-3 and John Does 1-20 acted negligently when they used excessive force against Plaintiffs Shainna Bernard, Jacob Carver, Misty Golinar, Braize St. Cruz, Cassandra Ziemer, Francesco Weiler, and Joey Gentile.

303.    Defendants committed the acts alleged in this complaint in a reckless, willful and/or wanton manner while working as police officers for the Cleveland Division of Police and the Cuyahoga County Sheriff's Department.

304.    Defendants' misconduct directly and proximately caused the injuries and damages suffered by Plaintiffs as described above.

305.    Defendants are jointly and severally liable for this conduct.

### TENTH CLAIM FOR RELIEF:
### State Law Claim for Assault and Battery
### against Defendants Kloos, Rutowski, Jane Does 1-3, and John Does 1-20

306.    All of the foregoing paragraphs are incorporated as though fully set forth here.

307.    The actions of Defendant Officers Kloos, Rutowski, Jane Does 1-3, and John Does 1-20 towards Plaintiffs Shainna Bernard, Jacob Carver, Emily Forsee, Misty Golinar, Ryan Jones, Braize St. Cruz, Cassandra Ziemer, and Francesco Weiler created in them the apprehension of an imminent, harmful, and offensive touching and constituted a harmful touching, knowingly and without legal justification.

308.    Defendants are jointly and severally liable for this conduct.

**ELEVENTH CLAIM FOR RELIEF:**
**State Law Claim for False Arrest**
**against Defendants Williams, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell,**
**Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik,**
**Ryan, Smith, LaRiccia, Jane Does 1-3, and John Does 1-20**

309.    All of the foregoing paragraphs are incorporated as though fully set forth here.

310.    Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little,

Blue, Januszewski, Mooney, Butler, and Gingell intentionally and unlawfully detained and

caused the arrest of Plaintiffs McKenna Grady and Alyssa Duncan without lawful privilege,

against their consent, and without probable cause.

311.    Defendants Onofrei and Butler intentionally and unlawfully detained and caused

the arrest of Plaintiffs Collin Fazio, Shainna Bernard, and Angel Kolasinski without lawful

privilege, against their consent, and without probable cause.

312.    Defendants Dwulat, Ryan, Smith, and O'Neill intentionally and unlawfully

detained and caused the arrest of Plaintiff Toni Crenshaw without lawful privilege, against her

consent, and without probable cause.

313.    Defendants Jane Does 1-3 and John Does 1-20 intentionally and unlawfully

detained and caused the arrest of Plaintiff Francesco Weiler without lawful privilege, against his

consent, and without probable cause.

314.    Defendants Williams, Jane Does 1-3 and John Does 1-20 intentionally and

unlawfully detained and caused the arrest of Plaintiffs Braize St. Cruz and Jacob Carver without

lawful privilege, against their consent, and without probable cause.

315.    Defendants LaRiccia, Jane Does 1-3 and John Does 1-20 intentionally and unlawfully detained and caused the arrest of Plaintiff Cassandra Ziemer without lawful privilege, against their consent, and without probable cause.

316.    Plaintiffs' arrests, unsupported by probable cause, was a violation of the laws of the State of Ohio.

317.    Defendants Williams, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik, Ryan, Smith, LaRiccia, Jane Does 1-3, and John Does 1-20 caused the illegal arrest, detention, imprisonment and institution of legal proceedings against Plaintiffs McKenna Grady, Alyssa Duncan, Collin Fazio, Shainna Bernard, Angel Kolasinski, Toni Crenshaw, Braize St. Cruz, Jacob Carver, Francesco Weiler, and Cassandra Ziemer.  Defendants' actions were malicious, in bad faith, and/or wanton and reckless.

318.    Defendants Williams', Blue's, Boyd's, Butler's, Collins', Cox's, Dwulat's, Gingell's, Januszewski's, Kinas', Laird's, Little's, Mangan's, Mooney's, Munson's, O'Neill's, Onofrei's, Pavlik's, Ryan's, Smith's, LaRiccia's, Jane Does 1-3's, and John Does 1-20's actions and conduct constitute false arrest, and false imprisonment, in violation of Ohio law.

319.    As a direct and proximate result of the misconduct of Defendants Williams, Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik, Ryan, Smith, LaRiccia, Jane Does 1-3, and John Does 1-20, Plaintiffs McKenna Grady, Alyssa Duncan, Collin Fazio, Shainna Bernard, Angel Kolasinski, Toni Crenshaw, Braize St. Cruz, Jacob Carver, Francesco Weiler, and Cassandra Ziemer suffered and continue to suffer, injuries, including but not limited to the loss of liberty, emotional distress, costs, and other damages as set forth in this Complaint.

320.     Defendants are jointly and severally liable for this conduct.

### TWELFTH CLAIM FOR RELIEF:
### State Law Claim for Malicious Prosecution
**against Defendants Blue, Boyd, Butler, Collins, Cox, Dwulat, Gingell, Hunter, Januszewski, Kinas, Laird, Little, Mangan, Mooney, Munson, O'Neill, Onofrei, Pavlik, Ryan, Sims, Smith, Patton, Jane Does 1-3, and John Does 1-20**

321.     All of the foregoing paragraphs are incorporated as though fully set forth here.

322.     In the manner described more fully above, Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, Mooney, Butler, Hunter, and Gingell, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiffs Alyssa Duncan and Tedd Byers without probable cause.

323.     In the manner described more fully above, Defendants Boyd, Kinas, Cox, Mangan, Onofrei, Pavlik, Collins, Munson, Little, Blue, Januszewski, Mooney, Butler, Gingell, and Sims, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiff McKenna Grady without probable cause.

324.     In the manner described more fully above, Defendants Onofrei and Butler, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiffs Collin Fazio, Shainna Bernard, and Angel Kolasinski without probable cause.

325.     In the manner described more fully above, Defendants Dwulat, Ryan, O'Neill, Smith, and Patton, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiff Toni Crenshaw without probable cause.

326.     In the manner described more fully above, Defendants Patton, Jane Does 1-3 and John Does 1-20, acting maliciously, individually, jointly, and in conspiracy with each other, instituted, participated in, or continued the prosecution of Plaintiff Francesco Weiler without probable cause.

327.     As a consequence of the criminal prosecution, Plaintiffs Toni Crenshaw, Alyssa Duncan, Collin Fazio, Shainna Bernard, McKenna Grady, Angel Kolasinski, Francesco Weiler, and Tedd Byers were unlawfully seized and deprived of liberty.

328.     Plaintiffs' criminal prosecution was terminated in their favor when the cases against them were dismissed.

329.     The actions of Defendants were committed intentionally, maliciously, culpably, in bad faith, and/or in a willful, wanton, or reckless manner.

330.     Defendants acted in reckless disregard of Plaintiffs' rights.

331.     As a direct and proximate result of this malicious prosecution, Plaintiffs Toni Crenshaw, Alyssa Duncan, Collin Fazio, Shainna Bernard, McKenna Grady, Angel Kolasinski, Francesco Weiler, and Tedd Byers suffered injuries, including but not limited to, the loss of liberty, emotional distress, loss of reputation, and other damages as set forth in this Complaint.

332.     Defendants acted under color of law and within the scope of their employment when they took these actions.

333.     Defendants are jointly and severally liable for this conduct.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands that judgement be entered in her favor on all counts and prays the Court award the following relief:

A.     Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Plaintiffs' rights;

B.     Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C.     Declaratory and injunctive relief against the City of Cleveland enjoining unlawful policies, practices, and customs and ordering the institution of policies, procedures, and training for the Cleveland Division of Police to bring them into compliance with constitutional standards;

D.     Declaratory and injunctive relief against Cuyahoga County enjoining unlawful policies, practices, and customs and ordering the institution of policies, procedures, and training for the Cuyahoga County Sheriff's Department to bring them into compliance with constitutional standards;

E.     Attorneys' fees and the costs of this action pursuant to law; and

F.     All other relief which this Honorable Court deems equitable and just.


***TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.***


*/s/ Sarah Gelsomino*
Sarah Gelsomino (0084340)
Terry H. Gilbert (0021948)
Marcus Sidoti (0077476)
Friedman, Gilbert + Gerhardstein
50 Public Square, Suite 1900
Cleveland, OH 44113-2205
T: 216-241-1430
F: 216-621-0427
sarah@FGGfirm.com
terry@FGGfirm.com
marcus@FGGfirm.com

Jacqueline Greene (0092733)
Friedman, Gilbert + Gerhardstein
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
T: 513-572-4200

F: 216-621-0427
jacqueline@FGGfirm.com

*Counsel for Plaintiffs*

Dated: August 18, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Sarah Gelsomino*
Sarah Gelsomino (0084340)

*Attorney for Plaintiff*